John Doe and Jane Doe, v. Levittown Public Schools Thank you, Your Honor, and may it please the Court, my name is Bruce Fine and I'm representing the appellants in this appeal. And I reserve three minutes for rebuttal. I'd like to make several points about the centerpiece of our challenge to the decision by the magistrate judge below. Number one, we believe, as Judge Henry Friendly has underscored, any kind of hearing requires some impartiality in the decision-maker. And we believe the record demonstrates that the decision-makers here were not impartial. They acted as prosecutors. You may recall in the first incident, this was the second day of school for a sixth grader, that the child... What should have been done? In other words, the argument is that the principal was not impartial. What should the school have done? Should they have brought in an outside judge? What should have been done? Well, the first thing, they shouldn't have lied and told the child that we have an audio tape of you using the word black monkey, which wasn't true. But at least with regard to the initial... The question is, you're saying that there had to be someone impartial. Who would that have been, I guess is what I'm asking. No. Your Honor, I believe it's a wonderful question. I don't believe it relates to the personality, but how they behave. There's nothing that would have disqualified Agavino and Zampiglione from being decision-makers. But they have to at least display some earmarks of impartiality. So we're not objecting to the fact that they used school administrators to listen to the complaint. It was the attitude of one, that of being a prosecutor. For example, regarding the first suspension, it was a three-day suspension, the second day of school. When there was an accusation, although the source is not disclosed to the child, that he used the word black monkey, he responded and said, that's not true. I had a collarbone that had been broken, very sensitive, and my colleague was irritating me by touching the collarbone. It was very, very painful. And I said, you know, you monkey, it's time to go to lunch. Denied ever using the word black. And indeed, I believe if you read the filings of the appellees, they walk away from the argument that he did use the word black. Although that's the word in the suspension letter saying these are racially explosive, incendiary words you use. Right. Let me just follow up on what Jim's question. So to the extent that you're not challenging the school officials as administrators, like they can't be as such. I guess I'm wondering what specifically, I mean, you're kind of going through what the, I don't want to say the evidence, because this was not a formal proceeding, but, you know, what the questioning was. What is the thing that they did or did not do that you think is an indicator that they weren't an impartial? Thank you, Your Honor. Those are very good questions. We believe, number one, there should have been a response to the student's statement, I didn't use those words. This is what happened. My shoulder was very sensitive. Whether the... You say a response. What does that mean? I mean, they heard the student say this and apparently did not credit it. This is what the record shows, Your Honor, that have to be taken as true at the motion to dismiss stage. That as soon as the student denied using the word black monkey and explained, I used the word monkey and said, you know, you need to stop irritating my shoulder. Go to lunch. The administrator said, you're lying. The administrator didn't respond like he could have and shown some impartiality. Well, this is what has been said on the other side. So-and-so said... The claim is a procedural due process claim. Absolutely. Yes. Your clients are unhappy with the substantive decisions that the administrators made. What was lacking in the process? What was lacking in the process is, one, the failure to provide any explanation as to why the denial that black monkey was used was not believed by the administrators. Secondly, not only was that a defect procedurally, but substantively. The suspension letters you read both use the word you're suspended because you used a racial epithet. For colloquial purposes, the N word, racial comments. But then later on, the administrators say, well, we'll take out the word black. And, indeed, if you look at the brief of the appellees, they make it seem as though the discipline was based upon using the word monkey alone. That is contrary to what's in the record. Mr. Greencourt in Goss made clear that in these kinds of situations, you can't expect a trial, a hearing. There have to be truncated proceedings. And most of the time, this is done within minutes of the allegedly offending act. I mean, what- No, we understand that you don't have-this is not a criminal trial. You don't need all those procedural safeguards. But you need something. That's what Goss v. Lopez was about. Here, there weren't any of those procedural safeguards. And I want to underscore, Your Honors, this wasn't an emergency. It was the second day of school. A sixth grader who disputes that he ever used the word black monkey in referencing a fellow student. So there may be situations where you have danger, physical danger, where there may be a need for action immediately. That wasn't this case. There may be other cases that are more difficult. And we also believe that the record really is devoid of any evidence that the student used the word or phrase black monkey. So I want to try to distinguish what seems like a substantive challenge, which is what you just described from the procedural one. This is a procedural challenge, as I understand it. It's a combination, Your Honor. One of the-oh, you're not just making a procedural challenge. You're challenging- We're saying that there's no evidence in the record that-credible evidence that the student used the word black monkey. Well, another student said he did. Is that not evidence? The student used the word monkey in isolation, which is not a racial epithet. All the suspension- Well, that is clearly- Your Honor, the suspension letters say and use the word racial comments, racial epithets. Okay. Well, let's put aside whether monkey is a racially coded term in its own right. One of the questions that I want to get before we lose you time-wise is you're making a procedural due process challenge, and when we look at the procedures that are offered, we look at the totality of the procedures offered, and in this case, there was an appeal procedure. There was an opportunity to raise all the arguments that you're making here to us now in court, and your client forwent that opportunity. How can we view the procedures as inadequate when there was an appeal process to address the very concerns that you're raising? Well, we believe, Your Honor, that Gospe Lopez doesn't say that if you have a summary suspension with no hearing, as long as you get an appeal, that's okay, that the appeal rectifies the wrong at the initial stage. Gospe Lopez does not suggest that whatsoever. And Gospe Lopez is a constitutional ruling. Insofar as there were appeal, you know, opportunities, that's something, a creature of State law. But Gospe doesn't suggest that, well, as long as you can correct an error after the fact, that's sufficient. That's how we would respond, Your Honor. Is this my time up, Your Honor? Yes, you've got some rebuttal. Thank you. Good morning, Your Honors. May it please the Court. Connor Mullen with Garcia and Garcia LLP here on behalf of defendants' appellees. I'll keep things brief. I will say plainly that the lower court got it right in their determination analysis of Gospe Lopez as it pertains to this matter. The infant plaintiff was twice suspended for making a racially derogatory remark. Both of those remarks were made within a matter of two weeks of one another. We acknowledge that we're confined to what is alleged in the amended notice, the amended complaint, excuse me. But at the same token, he does acknowledge the fact that the word monkey was used twice within a matter of time. Can I ask about that?  And again, I realize we're sort of looking at the pleadings, but, you know, I'm a little bit confused about this idea that is the school backing away from the assertion reflected in the letter that he was disciplined for using the phrase black monkey?  So in the first instance, that was how it was memorialized in the suspension letter, which was attached to the motion to dismiss. The reasons given for the suspension was that he had used that specific phrase, black monkey. The following suspension letter does not specify the language that was used as a result, but at the same token, again, it was acknowledged, and not to shy away from it, but because of the fact that we're constrained by the amended complaint, don't want to get into exactly what was said from their perspective, but they wanted to kind of leave out the verbiage as a result in that suspension letter because of concerns that were raised. Nonetheless, the words were used as acknowledged by the infant plaintiff in the complaint. The same exact words that he was suspended for just two weeks prior, you know, he still did not have the wherewithal to refrain from using that language. So there was, was there, is there an allegation that there was an amendment to the first letter that changed the charge or just that the second letter failed to repeat the exact language? There's an allegation, yes, that there was not, that there was a change in how the letter was presented for the reasons that were given, but more or less it just kind of opaquely framed the words that were used rather than the direct language that was asserted to be uttered by the student himself. So I, and I should know this, and I'm sorry. Is there a revised letter in the, in the? Not attached to the motion, no, Your Honor. Okay. Okay. Now the infant plaintiff, again, as a procedural issue, which is his rather than a substantive one, was provided the adequate notice, both orally and in writing, about why he was being suspended on both occasions. Following the first suspension. We're hearing that there's not just a procedural challenge, but also a substantive challenge. I will. I suppose that means that the decision was just wrong, but how do you respond to that? I don't know where it's coming from in terms of it being a substantive sort of analysis of due process here, because as we have argued and has only been presented thus far has been a procedural issue thus far. Yeah, I don't think the complaint alleges a substantive due process. It does not anywhere. So as far as we're concerned and how it has been briefed, both on motion to dismiss and then following on appeal, is that this is solely a procedural due process issue. How do you respond to the argument that it was evident from the administrator's actions and statements that they were not impartial? I think that that's more or less a blanket assertion just for the sake of making the argument. Both assertions of impartiality without anything of substance behind it as determined in, if you bear with me for a second. There was a specific allegation that wasn't just sort of broad and conclusory. It was they pretended to have evidence that they didn't in fact have in an effort to sort of elicit a confession. And this is, and I understand that Goss allows you to be sort of the prosecutor and the judge at the same time, but I think the argument is that manifests sort of a process that's not fair from the judicial side of things. I don't know exactly where it's uttered, but it's something to that effect. Excuse me, I've lost my train of thought. But from our perspective, I understand that the usage of the video is kind of, and how it was presented to the infant plaintiff is kind of contorted in a way to make it appear as if they were trying to put him in a corner. And we are constrained again by the amended complaint here, but by the same token, he did admit to using the exact same word that he was suspended for just two weeks prior as a result. And that is how the suspension letter was written after the fact. So while the usage of the video and how it was presented to the plaintiff is presented, I think it's more of a red herring than anything else in an effort to kind of distort the impartiality of the process in which both the dean and the principal abided by in lending discipline for pretty, you know, racist conduct. Now, and again, it's something that I have to say, I mentioned before, was a concern regarding procedural safeguards here. As Your Honor eloquently identified, is that there were procedural safeguards. He had the opportunity to appeal the decision as it was presented to him in the second suspension letter that was given to him. Had he chosen to appeal, I'm sure that would have been a part of the complaint as that would make it a much more viable potential procedural due process issue here. He did not. He had the opportunity to do so. How would his appealing make it a more viable procedural due process issue? If for whatever reason that appeal got denied, something along those lines to that effect. That was not done here. There was no challenge to it that was specifically afforded to him as laid out in the second suspension letter. He had the opportunity to do so. He chose not to. It applies common sense if the opportunity to question the witnesses that were accusing you of saying things that you maintain that you did not do, you forego that opportunity just for the sake of it when you had the opportunity to rebut that if it was something that actually wasn't said as a result. Now, generally speaking, I think that the main crux of the issue here is whether or not Philosophy Lopez was followed and abided by. I don't think that there's any doubt that that was the case here. He was given both oral and written notice, reasons for his letter, and an explanation of the evidence for which he supported the suspension decisions. So if it's true that in the course of the conversation that sort of takes this place at the hearing, is the due process, the school administrators claim to have inculpatory evidence that they don't really have in an effort to elicit confession, is that an acceptable process under God? Had that been the case here? Then perhaps not, Your Honor. Well, isn't that alleged to be the case? It is, but at the same time, it's not the reason that was given for the suspension letter, right? And, again, I believe that to be more of a red herring to distract from the fact that the plaintiff's student admitted to using the words that he did. Well, now you're actually defending the process with the substance, right? And so I guess the question is, are you — is it your position that, A, that is within the realm of constitutionally acceptable process to do what was alleged, even though I suspect that there's an item in it? If it were true, no, I would not. All right. So then your view is even if it's not, that is not within the realm of constitutionally In this case, it's harmless because the admitted evidence supports the discipline? He was — the infant plaintiff was afforded the opportunity to appeal the suspension as laid out in the second suspension letter. And Gospie-Lopez strictly dictates that all that needs to be afforded is an explanation of the reasons as to why the suspension — Okay, but I just asked you, Gospie-Lopez, that's the specific affirmative thing it requires. It doesn't say whatever — you can do whatever you want in the context of that conversation. And I think you just conceded that pretending to have evidence you don't really have in order to try to elicit confession would not be within the realm of permissible process. And Gos doesn't really address that question. Am I — It does not address that specific question because that's not the fact I'm going to believe that is laid out in Gospie-Lopez. But at the same token, again, as it reflects in this case, all that is required is an explanation of the evidence that was given. And I think that that kind of takes away from the evidence that was provided to the administrators, which was that one infant student complained about having a very similar derogatory comment made to him within a matter of a couple of weeks. Two weeks after the first suspension was due to be incomplete. The following week, he approached him again, said that he's saying the same comments, more or less. And then, in the process of discovering what actually occurred, a second student, who was his friend, who allegedly he had directed the comment towards, was brought in for questioning and asked whether or not he made the comments. And as mentioned in the amended complaint, he said that he constantly makes racial comments. So from the school's perspective, it more or less affirmed that he had made the comments. And that is what was explained to him as required under Gospie-Lopez. I'll see the rest of my time unless you have any further questions. All right. Thank you. Thank you. Thank you, Your Honors. Let me clarify. The second suspension letter said explicitly the suspension was for making, quote, racial comments, not for some neutral reference to monkey. And at least with regard to monkey, I grew up and we read about Curious George, who was a monkey. In isolation, it didn't carry any racially derogatory element here. You're sort of, I mean, I don't even know how we would get into the question of how monkey should be interpreted when it's being used to either describe or talk to or whatever a black student. And so that seems like that's beyond sort of. No, listen, I understand in context. But that part doesn't, to me, go to this question of the procedural due process here. That goes to, I'm not even sure exactly what that goes to. I want to underscore that we believe the evidence shows that the reason for the initial use of the word monkey was because the other student was hitting on his collarbone. That was very painful. Well, that explains why he was annoyed. But that doesn't tell us whether the word that he used was a racially coded term or not. Well, he didn't. I think the record shows he did admit using the word monkey, but not in a racially derogatory context. There is an electronic game called Gorillatay. Yeah, yeah. So within their code words. We read the brief about Gorillatay, which he never invoked in any of this process or conversations below. But what I'm puzzled that you're hanging your hat on monkey isn't racial when they actually, he said, talk to my buddy. He'll tell you that. And they go talk to his buddy. Well, we don't know. He has very racial remarks. Well, we don't know whether the buddy said that. Looking at the allegations of the complaint, paragraph 63, it appears that Zampaglione, he wasn't saying the word black wasn't used. But I'm going to excise it just to calm things down a bit so that, you know, that seems that's the gist I get from paragraph 63. You know, I think you're absolutely right, Your Honor. So it's not an admission that they lied when they used the word black the first time. Well, this is, but it makes, I believe, Your Honor, some kind of contradiction. Because the discipline says the reason why you're getting suspended is because you used the phrase black monkey. But if you take the word black, then what's the reason for the suspension? It sounds like they took the word black out just so that the record would be a little bit better for M. Well, okay. We think that at least at the motion-to-dismiss stage where all inferences, reasonable ones, should be drawn in favor of the non-moving party, the inference that works for the plaintiff is the one that should be adopted. If I can just jump in for a second. It just seems like there's just a lot of, and your adversary did this to some extent, too, just a lot of mixing of both the procedural element of this and the substantive element. And a lot of what I'm hearing from you just sounds like a challenge to the substance of the decision that the administrators made, as opposed to the process that got them there. And so you're talking about what their ultimate decision was and the idea that it really wasn't supported. And I guess I'm still struggling to see the, if we take out the substance, the process part alone that you have the biggest issue with, I guess. A very good question. Try to think of this example, Your Honor. A defendant is accused of a crime. He comes in and the judge says it's a non-jury trial. You're guilty, right? No evidence, anything. Is that a procedural violation or substantive? We think that the two overlap in this particular situation where there's no evidence at all. Certainly that our client used the word black monkey. And we believe that was the charge. If they want to charge him with just using monkey, then that's a different process here. Is the report from a fellow student that he used that term evidence? Or are you saying that nobody actually used that, made that allegation? Which allegation, Your Honor? That he used the term black monkey. Oh, that was the allegation that was used against him from the very beginning. Right, and some other student made that claim. We don't know who, at least at present as we speak, we're clueless as to who was the accuser right now. We don't know. Okay, but he was told that somebody heard him say that. Well, we don't know whether it was somebody or he was just told, you used the word black monkey, that was in isolation. We don't really know what the source was. Right now, maybe it could come out on discovery, Your Honor. I would like, if I could, address briefly this idea that as long as there is an appeal process to correct due process violations at the beginning, that is adequate. I think the Supreme Court has held that you're entitled to due process at the first round. Even if you have a complete right to de novo review where the first round is completely ignored, there still can be a due process violation. You have them from the very beginning. And I don't believe, you know, a successful appellate process cures a due process violation at the initial stage. The last thing I'd like to address, Your Honors, and I apologize if I'm going over, so I don't want to. And that is with regard to the evidence. Remember, on the second occasion, it was based upon a video, a silent video. And nobody claims to be a lip reader. And suddenly our student is said, well, you used the word, the N word again. A silent video? How do they know? And the explanation that we provided, that the student provided, was I was just talking to a friend. So we believe that's additional evidence that shows prosecutorial bent. Why are you searching around to try to trick, if you will, a sixth grader into confessing? He's very fragile at that age. We have very, very large administrators. And, you know, when you're sixth grade, you look up at your superior's principles, assistant principles, with great respect. And we think this shows a prosecutorial bent. But thank you, Your Honor, for permitting me to go over. If you have any more questions, I'll sit down. All right. Thank you. Thank you. Thank you to both of you. We will reserve decision on this. Thank you.